UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Nancy Montemerlo**

    **v.**                                      Case No. 12-cv-13-PB
                                               Opinion No. 2013 DNH 134
**Goffstown School
District, SAU #19**


MEMORANDUM AND ORDER


Nancy Montemerlo, a former teacher in the Goffstown School District (the "District"), has sued the District under the Americans with Disabilities Act ("ADA") and analogous provisions of the New Hampshire Law Against Discrimination. Montemerlo alleges that the District failed to accommodate her disabilities when it denied her May 2009 request to transfer to a position as a fourth grade teacher (the "Transfer Claim") and when it denied her request in the spring of 2011 to use her diabetes pump and test her blood glucose level as needed during school hours (the "Testing Claim"). The District has moved for summary judgment on all counts.[1]

_____

[1] Montemerlo's amended complaint contains ten counts. On April 2, 2013, I dismissed Count VII, an unsustainable equal protection claim, against individual defendants Kilmister and Hunt. Doc. No. 18. Montemerlo does not contest the District's motion for summary judgment with respect to Counts V through X. Doc. No. 33-1.

## I.  <u>BACKGROUND</u>

Montemerlo suffers from type-2 diabetes, a degenerative back condition, and a history of cavernous sinus thrombosis.[2] She claims that all three conditions qualify as disabilities that affect major life activities.  Doc. No. 33-1.

In 1975, Montemerlo earned a bachelor's degree in elementary education, after which she worked as a municipal social worker until 1986.  In 1985, Montemerlo received her certification from the State of New Hampshire to teach elementary education, which she has renewed every three years until 2013.  She is also certified in social work and as a Family and Consumer Science ("FACS") teacher.  Montemerlo additionally holds a "Highly Qualified Teacher" status for grades K-6.[3]  <u>Id.</u>

---

[2] "Cavernous sinus thrombosis" is a "septic thrombosis of the cavernous sinus, usually caused by bacterial sinusitis."  <u>The Merck Manual of Diagnosis and Therapy</u> 925 (Mark H. Beers et al. eds., 18th ed. 2006).  A stroke is a not uncommon complication of this condition and Montemerlo alleges that she has had a stroke, although she has provided no medical evidence to support this contention.

[3] The No Child Left Behind Act requires that only "highly qualified" teachers should instruct core academic classes in school districts receiving Title I government funding.  20 U.S.C. § 6319(a) (2012).

2

In 2000, Montemerlo was hired by the District as a Student Support Teacher to provide classroom-based guidance for fourth through eighth grade students.  Doc. No. 25-2.  In 2005, she became a FACS teacher for grades seven and eight at Mountain View Middle School ("Mountain View").  In this role, Montemerlo taught four units: a career unit, an introduction to cooking and food unit, a sewing unit, and a unit on financial literacy.  Her schedule required her to teach for the first six periods of an eight period school day.  On average, Montemerlo taught 100 students per day.  Mountain View's schedule is organized by trimesters, so Montemerlo taught 300 students over the course of each school year.  Aside from her normal duties as a FACS teacher, Montemerlo worked with fifth grade students on several projects, including making murals, quilting, and designing handbags.  Doc. No. 33-3.

**A.    The Transfer Claim**

    1.    Prior Notification of Disabilities

Prior to her 2009 transfer request, Montemerlo interacted several times with District officials concerning her medical condition.  In the spring of 2008, Montemerlo approached James Hunt, Mountain View's principal, to inquire about an opening for

3

a Highly Qualified math teacher position.  Montemerlo claims
that she told him that she needed a position that was "less
physically and mentally demanding" because of unspecified
medical conditions.  Doc. No. 33-3.

    In September 2008, Montemerlo contacted the District's
Human Resources Department to request individualized instruction
with computers and a "504 plan"[4] due to her "many medical
issues."  Doc. No. 25-4.  Pursuant to Montemerlo's request,
Carol Kilmister, the District's Director of Human Resources,
asked Montemerlo to submit medical information detailing her
conditions and needs.  Prior to receiving this information,
Kilmister met with Montemerlo, arranged for her to obtain
additional computer assistance, and agreed to provide her with
written materials to support her during meetings.  On November
11, 2008, Montemerlo provided a letter from her doctor that
stated: "this is to confirm that Nancy has several health

---

[4] Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §
794(a) (2006), protects qualified individuals from facing
discrimination based on disability.  See generally McDonough v.
Donahue, 673 F.3d 41, 46 (1st Cir. 2012) (setting forth elements
of a claim under Section 504 of the Rehabilitation Act).  The
term "504 plan" is usually used to describe an educational plan
developed for a student with disabilities pursuant to the
Rehabilitation Act.

conditions, including type 2 diabetes, spinal stenosis and a
history of cavernous sinus thrombosis that may necessitate
occasional absence from work.  She has slight slowing of
processing time, and may require longer instruction, or
repetition when learning new tasks." Doc. No. 25-6.  Montemerlo
continued to complain to her supervisors during this period
about "the excessive demands of [her] position in relation to
[her] disabilities." Doc. No. 33-3.  She also claims that she
never received the written materials that the District agreed to
provide her.

2.  <u>Montemerlo's Request for Transfer</u>

On April 22, 2009, the District published notice of an
available fourth grade teaching position at a different
elementary school within the District.  On April 24, Montemerlo
emailed Kilmister to express interest in the position and ask
about the proper method for requesting an official transfer.
Doc. No. 25-8.  Kilmister replied that same day, telling
Montemerlo to send the principal a letter of interest, resume,
and "any other material that you would like."  <u>Id.</u>

Montemerlo next sent Kilmister a letter dated April 25.
The letter requests a transfer to "a teaching position within

the district that would better meet [her] needs." Doc. No. 25-
9.  The letter identified aspects of her job that are
"particularly problematic," including that she (1) is required
to stand for many hours; (2) finds the upkeep of the classroom
to be "a huge challenge;" (3) lacks co-worker support; (4) lacks
a supervisor; (5) has problems with efficiently planning and
grading for her many students; (6) works many extra hours each
week; (7) has trouble with budgeting; and (8) has trouble
maintaining the large paper trail required by the District.  She
did not, however, explicitly link any of these difficulties to
her medical conditions.  Kilmister responded without addressing
any of the concerns Montemerlo raised, again requesting that
Montemerlo make her transfer request to the principal in the
school where the opening had occurred.  Doc. No. 25-21.

On May 11, 2009, Montemerlo sent an application to the
principal of the school with the open teaching position, along
with a resume and letter of interest, stating "I am requesting a
transfer for health-related reasons, recently informing . . .
Mountain View administration . . . of my wish." Doc. No. 25-10.
No one within the District responded to Montemerlo's request for
a transfer, and when Montemerlo eventually followed up with a

phone call about the position, the principal informed her that
they were looking for someone with a more current credential and
wished her luck.  Doc. No. 33-2.  The position was filled by
another candidate, with Montemerlo having received no interview
and no further responses to her transfer request.  Id.

    3.   Montemerlo's Subsequent Complaint and the
          District's Response

In the summer of 2009, Montemerlo filed an administrative
complaint with the New Hampshire Commission for Human Rights
alleging unlawful discrimination by her employer.  Doc. No. 9.
Pursuant to her complaint, in either November or December 2009,
Montemerlo provided the District with additional medical
documentation, including notes from her chiropractor and
treating physician.  Both notes stated that the physical demands
of the FACS position were beyond Montemerlo's capabilities.
Each recommended accommodations, including hiring additional
support staff, providing help with cooking lessons and other
"heavier tasks," or transferring Montemerlo to an elementary
school position.  Doc. Nos. 25-11, 12.

Upon receiving these notes, Kilmister observed Montemerlo
in the classroom, noting, among other things, that she looked
tired and that students left the classroom without cleaning up

after cooking.  Kilmister then met with Montemerlo, made
suggestions to reduce her cleanup obligations, instructed
maintenance staff to provide assistance, and agreed to review
additional accommodations as needed.  Doc. No. 25-21.  The
school created a process to assist Montemerlo with bringing
groceries to the class and provided "additional custodial
support," such as putting chairs on tables at the end of the
day.  Id.  According to the District, the parties agreed that it
would begin by phasing in such accommodations before turning to
additional measures such as hiring a "paraeducator" to provide
additional classroom assistance.  Id.  Montemerlo was instructed
to call if she had any questions or concerns about
accommodations.  Id.

## B.    **The Testing Claim**

In March 2011, pursuant to her doctor's orders, Montemerlo
began using an insulin pump that required her to regularly test
her blood sugar levels.  On March 24, Montemerlo emailed
Kilmister regarding her insulin pump and the frequent testing
requirements, asking for "guidance" on how to manage her
diabetes.  Doc. No. 33-5.  Montemerlo was most worried about the
propriety of testing in front of students in her classroom and

wanted to learn about viable alternatives.

On March 29, Kilmister responded to Montemerlo's email by requesting medical documentation.  In her email, Kilmister asserted that this documentation would help the District answer Montemerlo's questions about accommodations, and stated that they could meet to discuss potential accommodations once the documentation was received.  Doc. No. 33-6.  Later that afternoon, Montemerlo responded to Kilmister by stating: "I am not looking for accommodations.  I am asking if it is okay to test . . . in front of students.  Just forget it." Doc. No. 33-7.

Montemerlo then quickly began pursuing other avenues of guidance.  She emailed Hunt, asking for the District and state policies on administering insulin during class.  Hunt requested that Montemerlo meet with him later that day, "given the importance of the questions you raise." Doc. No. 33-9.  On March 29, Montemerlo also contacted the New Hampshire Department of Education for guidance on the same issue.  Doc. No. 33-13. Early that afternoon, Montemerlo met with Hunt and Nicole Doherty, another supervisor.  Doc. No. 25-14.  Doherty told Montemerlo that testing in front of children was unacceptable.

When Montemerlo mentioned that it was stressful "sneaking" around testing, Doherty mentioned that the school would arrange for someone to cover her classes.  Doc. No 33-2.  Montemerlo does not claim that she ever asked anyone to cover for her when she tested her blood.

During the afternoon of March 29, Kilmister responded to Montemerlo's email, noting that the "just forget it" comment was inappropriate and explaining the reasoning behind the request for medical documentation.  Kilmister wrote, among other things, that "this medical documentation will allow us to make an informed decision as to your ability to perform the essential duties of your position while under your physician's care." Doc. No. 33-10.

At Montemerlo's request, her doctor sent the District the following note on April 5:

> Ms. Montemerlo is a very intelligent and competent patient.  Monitoring and treatment of her diabetes should not interfere with her teaching during the day. She may need to check her blood sugar during the day using a glucometer that accompanies the pump . . . I do not feel that this should cause any problems at the school or with any of her students.

Doc. No. 33-16.  On April 7, Kilmister responded by emailing Montemerlo, thanking her for contacting her physician.

Kilmister explained that, given the doctor's statement,
Montemerlo should

> continue to self-monitor your health, and that no
> accommodations need to be made for you per they [sic]
> physician's letter.  If your condition changes and/or
> you experience problems/concerns with working and
> monitoring/treating your condition, please contact me
> as soon as possible.  Thank you and please call me if
> you have any questions. . .

Doc. No. 33-17.  Montemerlo replied later that day, and again

explained that "my request was not for any accommodations, but

for policy regarding doing what I need to do during the day."

She further stated,

> I have asked for guidance on handling this, and still
> have questions and concerns.  I will test, as needed,
> using appropriate discretion . . . I guess one could
> say that I am requesting an accommodation to be . . .
> able to test my blood, without repercussions, in the
> workplace, as needed . . . . If the district believes
> that the risk is too great, and that testing must be
> done in the bathroom, I will need accommodations, as I
> cannot, obviously, leave my students. I would prefer
> to not be accommodated, but to take care of myself,
> minus interruptions to visit the bathroom.  Until I
> hear from you, I will test, and administer insulin,
> wirelessly, in my classroom.

Doc. No. 33-18.  Montemerlo had no further communications with

Kilmister regarding testing.

On June 3, 2011, Montemerlo filed a charge of

discrimination, claiming that the District's prohibition of

testing in front of students and its failure to provide an
adequate alternative led to her failure to adequately test on
three out of every five days.  In August 2011, Montemerlo
informed the District she would not be returning for medical
reasons and applied for one year leave, which was approved by
the District.  She claims that the District's failure to
accommodate her disabilities forced her to not return to work.
Doc. No. 33-8.

## I.    STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a).  An issue is considered genuine if the evidence allows a
reasonable jury to resolve the point in favor of the nonmoving
party, and a fact is considered material if it "is one 'that
might affect the outcome of the suit under the governing law.'"
United States v. One Parcel of Real Prop. with Bldgs., 960 F.2d
200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986)).  In ruling on a motion for
summary judgment, I examine the evidence in the light most

favorable to the nonmoving party.  Navarro v. Pfizer Corp., 261
F.3d 90, 94 (1st Cir. 2001).

    The party moving for summary judgment bears the initial
burden of identifying the portions of the record it believes
demonstrate an absence of disputed material facts.[5] Celotex
Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In determining what
constitutes a material fact, "we safely can ignore 'conclusory
allegations, improbable inferences, and unsupported
speculation.'"  Carroll v. Xerox, 294 F.3d 231, 237 (1st Cir.
2002) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896
F.2d 5, 8 (1st Cir. 1990)).


## II.  ANALYSIS

    Montemerlo claims that the District failed to make
reasonable accommodations as required by the ADA, 42 U.S.C.
§ 12112(b)(5)(A) (2006 & Supp. II 2008), and the New Hampshire
Law Against Discrimination, N.H. Rev. Stat. Ann. § 354-A:7

---

[5] Under this court's Local Rules, the moving party complies with
this responsibility by filing a brief statement of facts "as to
which [it] contends there is no genuine issue to be tried."  LR
7.2(b)(1).  If the moving party meets this burden, the non-
moving party must produce its own brief statement of the facts
it alleges to be in dispute.  Id. 7.2(b)(2).

(2013).  This court and the New Hampshire Supreme Court both
note that the New Hampshire state courts have construed
disability claims under the state's Law Against Discrimination
in conformity with the ADA.  McCusker v. Lakeview Rehab. Ctr.,
Inc., 2003 DNH 158, 6, 7 (citing Petition of Dunlap, 134 N.H.
533, 540 (1991)).

     Under the ADA, "an employer who knows of a disability yet
fails to make reasonable accommodations violates the [ADA]."
Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 264
(1st Cir. 1999); accord 42 U.S.C. 12112(b)(5)(A).  To avoid
summary judgment on her reasonable accommodation claim,
Montemerlo must produce enough evidence for a reasonable jury to
find that: (1) she is disabled within the meaning of the ADA;
(2) she was able to perform the essential functions of the job,
either with or without a reasonable accommodation; and (3) the
District, despite knowing of Montemerlo's disability, failed to
reasonably accommodate her.  See Rocafort v. IBM Corp., 334 F.3d
115, 119 (1st Cir. 2003) (citing Carroll, 294 F.3d at 237).  I
analyze both the Transfer and Testing Claims individually under
the test set forth by the First Circuit in Carroll and Rocafort.

**A.**   **The Transfer Claims**

      The District argues that it is entitled to summary judgment on the Transfer Claim because: (1) Montemerlo cannot prove that she was qualified for the position she was seeking; and (2) her transfer request was not a sufficiently specific request for an accommodation.  I reject both arguments.

      1.   Montemerlo's Qualifications

      Under the ADA, the general rule states that "no [employer] shall discriminate against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a)  (emphasis added). Assessing whether an individual is qualified requires a two-step analysis.  Colon-Fontanez v. Municipality of San Juan, 660 F.3d 17, 32-33 (1st Cir. 2011) (citing 29 C.F.R. § 1630.2(m) (2012)). First, the employee bears the burden of showing that he or she possesses the requisite skill, experience, education, and other job-related requirements for the position.  Second, the employee must show that he or she is able to perform the essential functions of the job, with or without reasonable accommodations. Id..

      The District claims that Montemerlo fails both prongs of the "qualified individual" analysis.  Doc. No. 25-1.

Acknowledging that Montemerlo had a current certification in
elementary education, the District nevertheless argues that she
had no teaching experience in the area and failed to pursue any
training in the field since 1985, when she first obtained her
certification.  The District also states that the resume
Montemerlo submitted for the position disclosed no elementary
school teaching experience or other professional development in
the field.  Finally, it claims that Montemerlo offers no
evidence of her ability to perform the essential functions of a
fourth grade teacher.  Noting Montemerlo's list of complaints
about the FACS position, the District asserts that the fourth
grade position would be more difficult on each front.  Id.

     The District's arguments are unavailing.  As the District
acknowledges, Montemerlo was certified by the State of New
Hampshire as an elementary school teacher.  It is immaterial
that she was certified in 1985.  The state itself does not have
a tiered system, where older certifications are less worthy than
newer credentials. Doc. No. 9.  Moreover, although the District
accurately notes Montemerlo's lack of experience in fourth grade
classrooms, Montemerlo has provided ample evidence that she has
worked with similar students in previous jobs and during

extracurricular endeavors in her current position.  Montemerlo

need not prove that she is the most qualified individual for the

position[6] – a reasonable jury could certainly find that she has

the job-related requirements for the position.

Montemerlo adequately supports her assertion that she is

able to perform the "essential functions" of the fourth grade

position.  The District correctly argues that I must give a

"significant degree" of deference to an employer's business

judgment about the "essential functions" required for a

position.  Jones v. Walgreen Co., 679 F.3d 9, 14 (1st Cir. 2012)

(citing 29 C.F.R. § 1630.2(n)(3)(i) ).  Both Jones and relevant

---

[6] The Equal Employment Opportunity Commission states that
"reassignment," for purposes of a reasonable accommodation,
means that a qualified employee automatically receives the
vacant position: "Otherwise, reassignment would be of little
value and would not be implemented as Congress intended."  Equal
Emp't Opportunity Comm'n, No. 915-002, Enforcement Guidance:
Reasonable Accommodation and Undue Hardship Under the Americans
with Disabilities Act (2002).  Some circuits have adopted this
reasoning, see Smith v. Midland Brake, Inc., 180 F.3d 1154,
1166-67 (10th Cir. 1999) (en banc), which appears in line with
Supreme Court precedent. See U.S. Airways v. Barnett, 535 U.S.
391, 397 (2002) ("The Act requires preferences in the form of
'reasonable accommodations' that are needed for those with
disabilities to obtain the same workplace opportunities that
those without disabilities automatically enjoy."). In a summary
judgment analysis, I need not consider whether others are more
qualified.  The employee must only show that he or she is
qualified and can perform the "essential functions" of the
position.

regulations, however, state that to ascertain an employer's
business judgment one should look to, among other things,
written job descriptions of a position's essential functions.
Id.  Here, the District provided a cover sheet for the job
posting, but no description of the job's requirements. Doc. No.
25-7.  Montemerlo correctly notes that the District has failed
to identify a single prerequisite in the job posting or position
that Montemerlo did not meet.  The District also argues that
Montemerlo's complaints about the FACS position – including
frequent standing, maintaining computer reports, and
organizational challenges – are equally pertinent to the fourth
grade position.  The District, however, fails to consider that
reasonable accommodations are to be considered when ascertaining
an individual's ability to perform the essential functions of
the job. Colon-Fontanez, 660 F.3d at 32-33.  The District has
never argued that Montemerlo could not perform the job of a FACS
teacher with reasonable accommodation, and it only briefly
argues that the fourth grade teaching position Montemerlo sought
would be any more demanding for a person with Montemerlo's
disabilities.  Montemerlo counters such arguments with
allegations that the FACS position is indeed more difficult due

18

to its physical demands – including heavy lifting and extensive
cleaning – and cognitive tasks – including teaching and grading
over 300 individual students each year.  Therefore, the District
is in no position to persuasively argue that she could not have
performed the fourth grade teaching position if she were given
reasonable accommodations.

2.  Notice

The District next claims that in applying for a "transfer,"
Montemerlo did not properly inform the District of her pertinent
disabilities.  The ADA only requires accommodations for "the
known physical or mental limitations" of an employee. 42 U.S.C.
§ 12112(b)(5)(A) (emphasis added).  It is the employee's burden,
then, to request the accommodation in sufficiently clear terms,
and the ADA's reasonable accommodation requirement "usually does
not apply unless 'triggered by a request' from the employee."
Reed v. LePage Bakeries, Inc., 244 F.3d 254, 261 (1st Cir. 2001)
(quoting 1 Henry Perrett, Jr., Americans With Disabilities Act
Handbook § 4.17, at 121 (3d ed. 1997)).  To satisfy the ADA, the
employee's request must (1) be "sufficiently direct and
specific," giving notice that he or she needs special
accommodation; and (2) explain how the request is linked to a

19

disability.  Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d
91, 102 (1st Cir. 2007) (citing Reed, 244 F.3d at 261; Wynne v.
Tufts Univ. Sch. of Med., 976 F.2d 791, 795 (1st Cir. 1992));
see also 1 B. Lindemann & P. Grossman, Employment Discrimination
Law § 5.III (5th ed. 2012).  The First Circuit has determined
that many requests founder on both fronts.  See, e.g., Jones v.
Nationwide Life Ins. Co., 696 F.3d 78, 89 (1st Cir. 2012)
(affirming summary judgment when request was not adequately
linked to a disability); Rocafort, 334 F.3d at 119 (affirming
summary judgment when accommodations were either provided or not
adequately requested in the first instance).  In summary, "[t]he
appropriate inquiry is whether defendant knew or reasonably
should have known that the reason for [the plaintiff's] request
was her disability."  Freadman, 484 F.3d at 103 (citing Wynne,
976 F.2d at 795).

      Here, on May 11, 2009, Montemerlo applied for the fourth
grade position by sending a letter to the principal stating, "I
am requesting a transfer for health-related reasons."  Doc. No.
25-10.  Viewed in isolation, this request might be lacking.
However, Montemerlo's request must be examined in light of the
District's longstanding awareness of Montemerlo's alleged

disabilities.  As early as the spring of 2008, Montemerlo expressed a desire to transfer to a less physically and mentally demanding position.  Doc. No. 33-3.  Moreover, in the fall of 2008, the District knew that Montemerlo had requested a 504 plan for her "many medical issues" in language directly invoking her disabilities under the Rehabilitation Act.  Doc. No. 25-4. Later that fall, Montemerlo's doctor submitted documentation of Montemerlo's type-2 diabetes, spinal stenosis, and history of cavernous sinus thrombosis.  Doc. No. 25-6.  Immediately prior to her application, Montemerlo officially requested a transfer in a letter to the District that included a litany of aspects of her job that were "particularly problematic," including issues at least arguably related to her previously expressed spinal and cognitive problems.  Doc. No. 25-9.

The District argues that Montemerlo's May 11 request failed to provide sufficient notice because she failed to support her request to the Principal with any medical records.  Doc. No. 25-1.  Although such documentation would be helpful, and there is "some burden to be specific," Freadman, 484 F.3d at 104, a plaintiff does not have to supply the defendants with medical records in order to provide adequate notice.  See, e.g., Taylor

21

v. Phoenixville Sch. Dist., 184 F.3d 296, 314 (3d Cir. 1999)
(holding that it is not necessary to disclose the specific name
of a disorder as long as a request provides enough information
to allow meaningful interaction to explore the types of
accommodation that might be necessary).

The District also argues that Montemerlo's transfer request
cannot be seen as a request for an accommodation because the
District had fully accommodated her disability before she
requested the transfer.  Even accepting that to be true, the
District's obligations do not end there: "[t]he duty to provide
reasonable accommodation is a continuing one, however, and not
exhausted by one effort." Ralph v. Lucent Techs., Inc., 135
F.3d 166, 172 (1st Cir. 1998).  Here, Montemerlo asked for a
transfer for "health-related reasons."  Given the facts and
circumstances and the history between the parties, a reasonable
jury could certainly find that this letter amounted to a
sufficiently direct and specific request.

The District failed to respond in any fashion to
Montemerlo's May 11 transfer request.  If a request for
accommodation is sufficiently direct and specific, the ADA
requires an employer to enter into an "interactive process" with

22

the employee:

> To determine the appropriate reasonable accommodation
> it may be necessary for the [employer] to initiate an
> informal, interactive process with the individual with
> a disability in need of the accommodation.  This
> process should identify the precise limitations
> resulting from the disability and potential reasonable
> accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(o)(3).  The employer has "an obligation upon

learning of an employee's disability to 'engage in a meaningful

dialogue with the employee to find the best means of

accommodating that disability'".[7]  Freadman, 484 F.3d at 104

(quoting Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 108 (1st

Cir. 2005)).  To be sure, the employee is obligated to

participate in good faith in this flexible, interactive process.

Id.  Here, the evidence, taken in the light most favorable to

Montemerlo, shows that the District failed to engage in any sort

of dialogue with Montemerlo after the May 11 letter.

   The District finally argues that upon receiving further

documentation as part of Montemerlo's administrative complaint,

---

[7] The District correctly notes that it was only required to give
Montemerlo a reasonable accommodation, not the particular one
she desired.  Doc. No. 25-1.  Although true, the District's
assertion is immaterial given that it failed to respond with any
suggestion regarding accommodations, reasonable or not.

it did not hesitate to begin the interactive process and suggest accommodations.  The District attempts to use this information to bolster its "inadequate notice" claim, but this later evidence would not bar a reasonable jury from finding that the District should have recognized Montemerlo's earlier transfer request as a request for accommodation.

Examining the record in the light most favorable to the nonmoving party, Montemerlo has presented sufficient evidence that she was qualified for the fourth grade position and that she adequately requested the transfer as an accommodation for her disabilities.  The District failed to respond to Montemerlo's request and to engage in any sort of interactive process.  I thus deny the District's motion for summary judgment on Counts I and II.

In rejecting the District's challenge to the Transfer Claim, I address only the arguments that the District has raised in support of its motion.  I express no view as to whether Montemerlo has a qualifying disability.  Nor do I consider whether the District adequately responded to her disabilities before she made her transfer request.  Finally, I take no position as to whether, assuming Montemerlo was qualified for

24

the fourth grade teaching position, her request for a transfer nevertheless could have been rejected based on the fact that the transfer would have had no effect on her ability to work.  A disabled employee does not have a right to a transfer to a new position simply because she is disabled.  Instead, a requested transfer must in fact address the disabilities that prompt the request.  Because the District has not adequately developed these arguments, I decline to consider them.

B.    **The Testing Claims**

The District argues that it is entitled to summary judgment on the testing claims because it reasonably accommodated Montemerlo's need to test her blood by offering to send someone to cover her classroom when she needed to test.  Montemerlo does not argue that the District's offer to provide classroom coverage was an inadequate accommodation for her alleged disability.  Instead, she asserts, without providing any evidence to support her claim, that "the District violated its own commitment to provide that coverage."[8]  Doc. No. 33-1.

---

[8]  To explain her failure to ask for someone to cover for her while she tested her blood, Montemerlo claims that any further effort on her part would have been futile.  Generally speaking, the First Circuit is unsympathetic to bare assertions of futility, particularly when – as in the present case – a party

Unsupported assertions, however, cannot substitute for evidence when responding to a motion for summary judgment.  Carroll, 294 F.3d at 236-37.

As I stated in an earlier order granting summary judgment on Count VII, this is not a case where the defendant was denied a request to use an insulin pump.  Doc. No. 18.  Nor is this a case where Montemerlo requested and was denied a reasonable accommodation.  Here, we have an ambiguous doctor's note, a misunderstanding, and an effort by the District to offer reasonable accommodations.  Instead of asking for someone to

---

was never disciplined or punished for making an accommodation request.  See, e.g., Freadman, 484 F.3d at 105 ("We reject plaintiff's proposition that employees who make requests have no obligation to further clarify their needs once the employer offers an accommodation the employee believes is insufficient.").

There may be instances where a futility claim is viable, such as when the employee makes a clear request, the employer either denies an accommodation or provides an unsatisfactory one, the employee has a reasonable basis to believe that further requests would be futile, and the employer should have understood the dynamic.  Id.  Yet such a finding could not be sustained on the current facts.  Montemerlo admits that she was never disciplined or punished by the District for testing, and further admits that she never followed up with any of the parties who offered her accommodation.  She also admits that she was able to obtain classroom coverage on other occasions when she needed to leave the classroom.  Thus, her futility argument simply is not credible even when the evidence is viewed in the light most favorable to her.

cover for her when she needed to test her blood in accordance
with her supervisor's instructions, Montemerlo brought suit.
Aside from Montemerlo's unsupported assertions, "[t]here is
nothing in the record from which we can discern any attempt by
the [District] to sweep the problem under the rug."  See Jacques
v. Clean-Up Grp., Inc., 96 F.3d 506, 515 (1st Cir. 1996)
(quoting Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130,
1136 (7th Cir. 1996)).

    Because the record does not include any evidence suggesting
that the District ever denied a request by Montemerlo for
classroom coverage so that she could test her blood, she has
failed to demonstrate that the District violated its duty to
provide her with a reasonable accommodation.  Accordingly, the
District is entitled to summary judgment with respect to the
Testing Claim.


                        **III.   CONCLUSION**

    The District's motion for summary judgment (Doc. No. 25) is
granted as to Counts III and IV, relating to the diabetes
testing, and Counts V through X, which Montemerlo did not
contest.  I deny the motion as to Counts I and II, relating to

                              27

Montemerlo's transfer request.

      SO ORDERED.

                            /s/Paul Barbadoro
                            Paul Barbadoro
                            United States District Judge

October 4, 2013

cc:   H. Jonathan Meyer, Esq.
      Stephen T. Martin, Esq.
      Brian J.S. Cullen, Esq.